FLEMING, Temporary Controls Administrator, v. PANTZER LUMBER CO.

No. 9124.

Circuit Court of Appeals, Seventh Circuit.

June 13, 1947.

William Rabinovitz, of Sheboygan, Wis., and Ralph Drought, of Milwaukee, Wis., for appellant.

David London, Director, Albert M. Dreyer, and Abraham H. Maller, Sp. Attys., all of Washington, D. C., Isadore L. Kovitz and Jacob Cohen, both of Chicago, Ill., and William E. Remy, Deputy Commissioner for Enforcement, of Washington, D. C., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

This is an O.P.A. over-the-ceiling price case, wherein defendant attacks a judgment entered against it, on the ground that the waste wood which it was able to sell because of unusual wartime conditions, was not "lumber" under Maximum Price Regulations 290 and 215. Defendant denies violation of either Regulation. The trial court concluded the waste wood which defendant sold was lumber subject to Maximum Price Regulations. It entered a judgment for $8292.94 and costs, in favor of the Government. The amount of the judgment was one and a half time the excess of the sales price over the ceiling price.

Upon the trial, testimony was received to the effect that Pantzer Lumber Company, a Wisconsin retail lumber company, doing business at Sheboygan, Wisconsin, bought Sitka spruce lumber from a dealer in the West and processed the spruce into tent poles pursuant to a contract which it had with the Government. The residue which the defendant had after this operation is the subject of this controversy.

Ordinarily, this residue is waste and not sold. But due to scarcity of wood during the war, a toy manufacturer was found who was willing to purchase this residuum, upon its being further processed in defendant's mill, according to specifications as to width and thickness, though not as to length of pieces.

This residuum was sold to the purchaser, chiefly by lineal foot measure, but sometimes by the board foot. The purchaser would not take it as it came from the fabrication of the tent poles, but required further "exact processing." After processing, this product was called, moldings[1] or dimension stock.[2]

Regulation 215 covers sales through distribution yards of softwood lumber. Regulation 290 covered Sitka spruce lumber sales. It covers "all Sitka spruce *lumber*, whether the grades, sizes and specifications are specifically named in the price tables in Article V or not." Article V sets forth various grades, specifications and sizes including boards, planks, small timbers, No. 1 dimensions, floorings, and ladder stock, but does not mention the product here in issue. Sec. 11 of Article V provides

"(a) If a seller wishes to sell a grade which is not specifically priced in the price table, or wishes to make an addition for special workings, specifications, services, or other extras for which additions are not specifically permitted, he must apply to the Lumber Branch, Office of Price Administration, Washington 25, D. C., for a maximum price. * * *

\* \* \* \* \* \*

"(d) On any sale involving a 'non-listed' price or addition contemplated by paragraph (a) of this section, if the seller, for any reason, shall have failed to apply for approval of a maximum price under paragraph (a), the maximum price for the item sold shall be $15.00 per 1000 board feet, which maximum price shall include all allowances or additions for grade, size, conditions, special workings, specifications or other extras."

The administrative interpretation defines "lumber" thus

"Mill trims. Short lengths not specially

---

[1] put through the molding machine.
[2] wood partially fabricated and which will be further fabricated in another operation; ordinarily under 6' length; "smaller sizes cut to exact dimensions."

priced, sold on the basis of grade or other specification for use in the manufacturing of toys, small boxes, novelties, etc., are lumber and are subject to the special pricing provision under the applicable mill regulation."

It is the Government's contention that (1) the trial court correctly concluded the wood in controversy was lumber; (2) the administrative definition is entitled to great weight; (3) the measure of damages used by the trial court was correct.

The Government claims that since the residuum was not specifically covered by the Regulation, defendant had the burden of applying to Washington for a ceiling price and having failed to do so, the Regulation figure of $15 per thousand (plus specific items) is controlling.

Defendant's position is earnestly and cogently presented. It is: (1) In no event is this *processed* waste wood *lumber* under the language of the Regulations. (2) The product of its *finishing mill or mill work shop* is not subject to Regulations governing wholesale or retail lumber distribution centers or planing mills. (3) Even, for the purpose of the argument, if the residuum falls under *any* regulation, it could only come within Regulation 290, Condition 20, Table 5, covering "cut stock" which provides that for such cut stock "Special cut-up stock to specified sizes use R/L[3] price of grade specified." Under this pro-

vision defendant calculates the permissible maximum to be $118.32[4] per thousand board feet and it actually charged less than $100. per thousand board feet.

Defendant's witnesses[5] stressed various factors going to make up their respective concepts of "lumber" and when wood ceased to be lumber,—such as *any* processing, processing which renders the piece of wood fit for the purpose intended, size, or smallness of piece of wood, whether the wood is of standard measurements; whether sold on lineal or board foot measure.

The trial court found the residuum, reprocessed and sold by defendant, to be used in the manufacture of toys "constituted lumber within the meaning of that term" as used in the Regulations. On eleven sales from August 2, 1944 to January 18, 1945, defendant received $9,538.66 in payment, which the court found to be $5528.63 over the legal price chargeable.

A study of the able briefs leave us not a little perplexed as to the scope of coverage of O.P.A.'s M.P.R. 290 and 215. We have concluded that with such a sharp difference of opinion as to what was meant by the term "lumber"—whether it meant simply boards, sawed from the trees, or covered processed boards—compelled our search of the Regulations in their entirety, not simply the isolated quotations given us.

A reading of the whole text leaves us in no doubt whatsoever that the Regulations.

---

[3] Random Lengths.

[4] Computed thus: B and better 8/4 x 3" grain (per table 5, M. P. R. 290) $37.-00 per M.B.M.; and then adding: for extra thickness to 12/4, $5., for sanding, $10; for freight and tax per M.P.R. 215, $18.75, for handling charge, per M.P.R. 215, $5., 10% markup, per M.P.R. 215, $10.57, for surfacing, per M.P.R. 215, $2.00, making a total of $118.32.

[5] Mr. Sine, a lumber manufacturer representative testified:

"Q. Now, Mr. Sine, if, in your opinion, these tent poles were no longer considered lumber because they had gone through a certain processing method, what is your opinion as to the small pieces of residue which went through, also, a processing method? A. It definitely is not lumber."

Mr. Wilbur, lumber dealer and millwork manufacturer testified:

"Q. After these pieces of residue are

machined and you say they would be called, either molding or cut dimension, would they be called lumber? A. No, sir.

"Q. Why not? A. Because the sizes are usually—some of the sizes may not be in the lumber grading rules as standard lumber or even in the price regulations and are used for different purposes, usually, than most lumber is used.
* * *

"Q. At what point does it cease to be lumber in the standards of the trade? A. When it becomes non-standard in size."

Mr. Hauter, lumber company employee testified:

"Q. And is this offal which is cut into certain stock—in your opinion is that lumber? A. No, sir, that is not lumber. Lumber is stock which is standard sizes sold as lumber, recognized by the trade as standard sizes."

did not intend to cover merely rough lumber or boards per se—they patently intended to cover boards of multitudinous varieties, in all stages of processing and with all kinds of special work performed on them.[6]

Notwithstanding the detailed specificity of the Regulations, it happened that the particular wood product under consideration was not covered. The ingenuity and enterprise of defendant converted a waste material into a saleable product—a most worthy activity, either in war or peace time. Its omission from specific inclusion in the Regulations occurred because theretofore it had not been sold, or had not been sold frequently enough for the trade, or for the Administration to take cognizance of it in formulating the Regulations. While engaged in a highly worthy work, defendant was nevertheless amenable to the O.P.A. Regulations. The Country was at war. The activities of all sorts of industry were controlled by this far-reaching governmental agency. It was deemed necessary by Congress for the protection of the citizen against price extortion and to help win the war. Harshness seems frequently to have followed the application of the Regulations of the O.P.A. to certain situations. On the other hand, the application of these same Regulations saved the consumer from exorbitant prices and no doubt justified the action of Congress in thus creating so powerful an agency in time of war.

In the situation before us, the serious consequences which have been visited upon defendant could and would have been avoided, had it applied to the Administrator and secured a ceiling price higher than the $15 maximum which applied if the seller failed to obtain a ruling on its permissible maximum.

It was to remedy just such a situation as this exceptional one that Sec. 11, of Art. V of Regulation 290, above-quoted, requiring the seller to apply for an administrative determination of the proper price, was promulgated, and an arbitrary price named where the seller failed to make such application.

We are not persuaded by defendant's defense, a plausible afterthought, not raised on the trial, that even though it could by a far-fetched construction be subject to Regulation 290, it still was under the maximum there provided inasmuch as table 5, covering "Sitka Spruce Finish and Clears" has a provision on "cut stock" according to which calculation it was selling under the maximum. According to defendant's own testimony, the wood used was "shop or better", and Table 9, covers that sort of material, but contains no category covering the particular wood here in question.

■ The facts were presented to the District Judge who made findings on the evidence received. If this were strictly a factual issue we would be bound by such finding.

■ We conclude, therefore, that defendant had the duty of applying to the Administrator, for the ascertainment of a maximum price at which it could sell this product, and failing so to do, was automatically limited to the $15. maximum provided for failure to apply for such determination.

The judgment is affirmed.

---

6 Regulation 215 (7 F.R. 2094). Sec. 1425.8(b) (2) "Kind purchased (grade, size, whether rough *of dressed* and how dressed * * *." "Maximum prices."

Sec. 1425.14(4) (c) "An Addition to the maximum prices established * * * may be charged for the *workings* as follows, when the working is performed by the distribution yard itself * * *. (d) Additions for *working, specifications, services, or other extras*, not expressly provided for herein shall be subject to the * * * (G. M. P. R.) * * *."

Regulation 290, 8 F.R. 19. Sec. 1381.-452(3) (b). "This regulation covers *all* Sitka spruce lumber * * * whether the grades, sizes and specifications are specifically named in the price tables * * * or not."

Sec. 1381.455. "What the invoice must contain—(b) * * * Any *working specification* or *extra* which affects the maximum price must be mentioned. * * *"

Sec. 1381.457. "Grades and classes of Sitka spruce lumber not specifically priced * * * are nevertheless subject to this regulation." Table V "*Working* Charges. 10. Standard surfacing; add $2.00 per M. to *rough* price. * * * 11. Sanding. * * * 12. *Nosing and special patterns* not covered. Add $5. * * *."